IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LINDA JEAN ANN GOINS, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-870-P |
| § | |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Linda Jean Ann Goins ("Goins") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Goins protectively filed her applications in October 2019, alleging that her disability began on March 1, 2017. (Transcript ("Tr.") 18; *see* Tr. 215-216.) After her application was denied initially and on reconsideration, Goins requested a hearing before an administrative law judge ("ALJ"). (Tr. 18; *see* Tr. 71-105, 134.) The ALJ held a hearing on October 5, 2021 and issued a decision on December 8, 2021 denying Goins' applications for benefits. (Tr. 18-27; *see* Tr. 41-70.) On July 27, 2022, the Appeals Council denied Goins' request for review, leaving the ALJ's December 8,

1

2021 decision as the final decision of the Commissioner in Goins' case. (Tr. 1-6.) Goins subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* In addition, numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Goins v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUE

In her brief, Goins presents the following issue: Whether remand is required because, in essence, substantial evidence does not support the ALJ's mental RFC determination because the ALJ failed to either adopt the mental limitations she found in the Paragraph B analysis that Goins had mild limitations in the four functional areas or explain why these limitations were omitted.[2] (Plaintiff's Brief ("Pl.'s Br.") at 1–12.)

## III. ALJ DECISION

In his December 8, 2021 decision, the ALJ found that Goins had not engaged in any substantial gainful activity since March 1, 2017, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through June 30, 2023. (Tr. 20.) At Step Two, the ALJ found that Goins suffered from the following "severe" impairments: lumbar degenerative disc disease with radiculopathy, cervical spine degenerative disc disease, degenerative joint disease of the bilateral shoulders, residual right shoulder arthroscopy, and a left foot drop. (Tr. 21 (emphasis omitted).) The ALJ also found that Goins' medically determinable mental impairments of depression and anxiety were non-severe. (Tr. 21.) At Step Three, the ALJ found that Goins did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 22-23.)

As to Goins' RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally stoop, kneel, crouch, or crawl. The claimant is frequently able to reach overhead with her bilateral upper extremities.

---

[2] Although Goins raised two issues in her opening brief, she withdrew the second issue in her reply brief. (*See* Pl.'s Br. at 1, 10-12; Plaintiff's Reply Brief at 5 n.1).

(Tr. 23 (emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that Goins was able to perform her past relevant work as a receptionist and office manager. (Tr. 26-27.) Consequently, the ALJ found that Goins was not disabled. (Tr. 27.)

### IV. DISCUSSION

As to her sole issue, Goins argues that substantial evidence does not support the ALJ's mental RFC determination because the ALJ failed to either adopt the mental limitations she found in the Paragraph B analysis that Goins had mild limitations in the four functional areas or explain why these limitations were omitted. (Pl.'s Br. at 1.) In support of her claim, Goins asserts:

> The ALJ completed the PRT analysis and found that Ms. Goins had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Because government attorneys have no authority to alter ALJ findings, the Agency is absolutely bound by the ALJ's PRT finding. Accordingly, there is no question whatsoever that Ms. Goins had mild limitations in her ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. Yet, there were absolutely zero mental limitations in the ALJ's RFC finding.
>
> . . . .
>
> For the ALJ to render a final RFC that did not incorporate any of the limitations she identified, she must explain why the unaccounted for limitations were omitted and would not impact Ms. Goins' working ability. The ALJ's failure to accommodate the limitations she found credible requires remand.
>
> . . . .
>
> The omission of even mild mental functional limitations is absolute legal error when the issue involves performing skilled work.
>
> . . . .
>
> Instead of performing any analysis of Ms. Goins' past relevant work, the ALJ presumptively found that she was not disabled because she could perform semi-skilled and skilled occupations despite her two medically determinable mental impairments. Ms. Goins' admitted mental limitations and their impact on her ability to perform her past relevant skilled work were critical in this case, yet the ALJ performed no function-by-function analysis at step four. Due to the ALJ's

5

>lack of articulation, remand is required for consideration of the mental limitations the ALJ found credible and their impact on Ms. Goins' ability to work.

(Pl.'s Br. at 4-6, 10 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

6

are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c).

---

[5] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

"Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[6] 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

In this case, the ALJ found at Step Two, as stated above, that Goins had no severe mental impairments and, after considering the mental impairments in making his RFC determination, did not included any mental RFC limitations in such determination. (Tr. 22.) In making these determinations, the ALJ considered Goins' testimony and statements in her Function Reports, the opinions of Goins' treating physicians, Beth Ann Valashinas, D.O. ("Dr. Valashinas") and Tony Hedges, D.O. ("Dr. Hedges"), examination reports from the disability determination services ("DDS") physicians, as well as other medical evidence in the record. Specifically, the ALJ stated:

> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal

---

[6] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. § 404.1520a(d)(1).

limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. . . .

. . . .

The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. In her adult function reports dated June of 2017 and November of 2019, the claimant noted she was able to shop in stores, manage funds, pay bills, count change, follow instructions well, and read (Exhibits 3E and 8E). [Dr. Valashinas] treated the claimant from June of 2015 to January of 2017. Examinations revealed normal speech, with grossly intact neurological functions. The claimant's psychiatric system was negative for anxiety and depression (see pages 9, 15, and 18 of Exhibit 2F).

The next functional area is interacting with others. In this area, the claimant has mild limitation. In her adult function reports dated June of 2017 and November of 2019, the claimant noted she was able to spend time with others, to get along with other people, and to get along with authority figures well. She reported she had never been fired from a job due to issues in getting along with others (Exhibits 3E and 8E). Dr. Valashinas treated the claimant from June of 2015 to January of 2017. Examinations revealed a pleasant mood, a happy demeanor, and a normal mood. The claimant's psychiatric system was negative for anxiety and depression (see pages 9, 14, and 18 of Exhibit 2F).

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has a mild limitation. The claimant testified she is able to follow television shows, which requires sustained concentration. In her adult function reports dated June of 2017 and November of 2019, the claimant noted she was able to pay attention, to finish what she started, to follow instructions well, to read, and to watch television shows (Exhibits 3E and 8E). She testified she is able to drive, perform light household chores, cook, and shop for groceries. Dr. Valashinas treated the claimant from June of 2015 to January of 2017. Examinations revealed normal attention, with grossly intact neurological functions. The claimant's psychiatric system was negative for anxiety and depression (see pages 9, 14, and 18 of Exhibit 2F).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant testified she is able to dress herself, to cook, to fold laundry, to shop for groceries, to use her hands, to follow television shows, and to shower. In her adult function reports dated June of 2017 and November of 2019, the claimant noted she was able to do light housework or clean, shop in stores, manage funds, pay bills, count change, maintain her own personal care, wash clothes, cook, pay attention, finish what she started, follow instructions well, read, get along with authority figures well, and/or handle stress okay (Exhibits 3E and 8E). Dr. Valashinas treated the claimant from June of 2015 to January of 2017. Examinations revealed intact orientation, alertness, normal grooming,

normal attention, and normal speech, with grossly intact neurological functions. The claimant's psychiatric system was negative for anxiety and depression (see pages 9, 14, and 18 of Exhibit 2F).

Further supporting the conclusion that the claimant's mental impairments are not severe is the lack of mental health treatment. The claimant testified, and the record supports, that the claimant receives no mental health treatment other than medication prescribed by her primary care provider. Mental status examinations at appointments consistently show the claimant is alert, fully oriented, with no mention of problems with attention or concentration. Indeed, her primary care provider [Dr. Hedges] noted that her anxiety and depression were stable and fairly well-controlled on medication (see pages 6, 7, and 13 of Exhibit 12F). Additionally, the claimant's physician[, Dr. Hedges,] completed a medical opinion form, indicating the claimant had "good" or "unlimited/very good" functioning in most areas of mental functioning indicated on the form (Exhibit 8F). All of the foregoing support the conclusion that the claimant's mental impairments are non-severe.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe (20 CFR 404.1520a(d)(1)).

. . . The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

. . . .

At the disability hearing, the claimant testified she is unable to work due to significant walking difficulty with frequent falls. She stated she suffers from . . . depression, sleep disturbance, and anxiety. The claimant asserted she takes anti-depression and anti-anxiety medications. . . .

. . . .

On June 24, 2019, the claimant was treated at Corpus Christi Medical Center Bay Area, for Barrett's esophagus. . . . The claimant denied having . . . anxiety . . . . The claimant also demonstrated a normal mood and affect, normal insight and judgment, normal thought content, normal speech and memory functions, and a normal gait. . . .

The claimant received treatment from Dr. [Valashinas] and at Lake Grandbury [sic] and Lakeside Physicians and Bald Eagle Family Practice, from June of 2015 to April of 2021, for anxiety, depression, and chronic pain. Medical reports reflected the claimant's anxiety, depression . . . were stable. . . . Medical records consistently reflected the claimant's depression or anxiety . . . were

> controlled fairly well by treatment modalities. Exams consistently indicated . . . normal speech and attention, a pleasant mood, a happy demeanor, and a normal mood. The claimant's . . . psychiatric systems were negative for . . . anxiety, weakness, and/or depression . . . .
>
> . . . .
>
> In July of 2017, in December of 2019, and in March of 2020, disability determination services (DDS) physicians found the claimant had no severe mental impairment and that the claimant possessed mild or no limitations in the four functional areas of the "B" criteria. . . .
>
> The DDS report reflected the claimant's depression and anxiety were stable and under full control (see page 6 of Exhibit 5A). . . .
>
> . . . Dr. Hedges also determined the claimant possessed at least a good ability to perform mental related work activities in November 2019 (Exhibit 8F). . . . The medical opinion in Exhibit 8F is persuasive, as it is consistent with records showing normal attention, concentration, normal mental status exams, and the lack of formal mental health treatment.
>
> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the claimant's medical records and severe impairments, as well as the overall medical evidence of record. Dr. Hedges further concluded the claimant possessed at least a good ability to perform mental related work activities, in November of 2019 (Exhibit 8F).
>
> . . . .
>
> The claimant's exams demonstrated the claimant was basically able to functional mentally and physically. . . .

(Tr. 21-26.)

While Goins claims that the ALJ's RFC determination is incomplete because there were no limitations included regarding her mild limitations in the four functional areas, the Court notes that the paragraph B criteria limitation of having mild limitations in the four functional areas in the special technique is not an RFC assessment. SSR 96–8p, 1996 WL 374184, at *4. Instead, it is used to rate the severity of Goins' mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id*. "The mental RFC assessment used at steps 4 and 5 of the sequential

evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments . . . ." *Id*. Moreover, "[w]hile the regulations require the ALJ to evaluate[ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.29, 2009).

An ALJ does not commit legal error by declining to include mental limitations in analyzing a claimant's RFC "so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Martha L. v. Saul*, No. 1-20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021). In this case, the ALJ, based on substantial evidence in the record, analyzed Goins' mental impairments under the special technique and found that Goins had no severe mental impairments. The ALJ, after continuing to consider Goins non-severe mental impairments of depression and anxiety throughout his decision, ultimately decided not to include any mental limitations in the RFC determination, finding that the medical evidence in the record indicated that such limitations were not needed. *See e.g.*, *Scott v. Comm'r, Soc. Sec. Admin*, No. 4:20-CV-01136-BJ, 2022 WL 4240888, at *10 (N.D. Tex. Sept. 14, 2022) (finding substantial evidence supported RFC determination that did not contain any limitations for non-severe mental impairments that were rated as mildly limited in all four paragraph B functional areas); *Perez v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-594-P, 2022 WL 4349559 at *10 (N.D. Tex. May 2, 2022), *rep. and recommendation adopted*, 2022 WL

12

4349552 (N.D. Tex. Sep. 19, 2022).[7]  The record shows, as set forth above, that the ALJ clearly considered and analyzed the evidence in the record relating to Goins' mental impairments, including evidence from Goins' treating physicians, the DDS physicians, as well as Goins' own testimony and statements. The ALJ explained that she was not including any mental impairments because, *inter alia*, the "claimant's exams demonstrated the claimant was basically able to function mentally" and that Goins' depression and anxiety were "controlled fairly well by treatment modalities." (Tr. 25-26.)  The ALJ exercised her responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the RFC. *Jacobs v. Berryhill*, No. 5-17-CV-429, 2018 WL 3323764, at *5 (W.D. Tex. July 6, 2018), *rep. and recommendation adopted*, No. 5-17-CV-429, 2018 WL 4688775 (W.D. Tex. July 24, 2018).  Accordingly, the Court finds substantial evidence supports the ALJ's RFC determination and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings,

---

[7] The Court notes that Goins, in her brief, cites (as relevant here) to several out-of-circuit cases in which the ALJ remanded the cases where mild mental functional limitations were identified in the Paragraph B analysis of the special technique but were omitted from the RFC because either no specific explanation for the omission was given or the explanation was invalid.  (*See* Pl.'s Br. at 6-7.) The Court, while not bound by these cases, notes that they are distinguishable because the ALJ in this case considered and discussed Goins non-severe mental impairments throughout the decision and set forth the evidence showing why no limitations for any mental impairments were included in the RFC determination. (*See*, *e.g.*, Tr. 21-26.)

conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 30, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED June 16, 2023.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE